**DENVER NEWSPAPER GUILD, LOCAL 74, Plaintiff,**

v.

**DENVER PUBLISHING COMPANY, d/b/a the Rocky Mountain News, Defendant.**

**Civ. A. No. 89–C–161.**

United States District Court, D. Colorado.

May 31, 1989.

Ellen M. Kelman, Brauer & Buescher, P.C., Denver, Colo., for plaintiff.

Richard S. Mandelson, Baker & Hostetler, Denver, Colo., for defendant.

## ORDER

CARRIGAN, District Judge.

Plaintiff Denver Newspaper Guild, Local 74, commenced this action by filing a complaint against the defendant Denver Publishing Company, d/b/a The Rocky Mountain News, to compel arbitration under a collective bargaining agreement. The parties have filed cross motions for summary judgment and a joint motion to waive the

usual scheduling conference and to set the matter for trial.

The parties have fully briefed the issues and oral argument would not assist my decision. Jurisdiction is based on § 301(a) of the Labor Management Relations Act of 1947 (the "Act"), 29 U.S.C. § 185(a), and 28 U.S.C. § 1337.

### I. *Factual Findings.*

The following facts are undisputed. Plaintiff is a Denver, Colorado unincorporated association and a labor organization as defined by the Act, 29 U.S.C. § 152(5). Defendant is a Colorado corporation that publishes The Rocky Mountain News newspaper in Denver and an employer covered by the Act. *See* 29 U.S.C. §§ 152(2), (6) and (7). Plaintiff and the defendant were parties to a collective bargaining agreement (the "agreement"), effective October 26, 1985 through October 21, 1988, covering the defendant's district managers and other employees. In September, 1988, the Regional Director of the National Labor Relations Board ("NLRB"), in a collective bargaining unit clarification decision filed in accordance with § 9(c) of the National Labor Relations Act, ruled that the defendant's district managers were managerial employees and should be excluded from the plaintiff's collective bargaining unit. That decision is presently on appeal before the NLRB.

Immediately after the Regional Director's decision, the defendant ceased to pay union dues on behalf of its district managers, as required by the language of the agreement's dues deduction provision (Article III). In its dispositive motion, the defendant takes the position that, as a result of the Regional Director's decision, it is not obligated to pay these dues. Plaintiff contends, on the other hand, that the decision did not alter the defendant's contractual obligation to deduct dues under the parties' agreement. Plaintiff also asserts that there is no dispute that the agreement included district managers in its coverage prior to the Regional Director's decision. (*See* Articles I Exemptions, II Jurisdiction, VI § A Security and XVIII Minimum Salaries.)

Plaintiff alleges, and the defendant admits, that the plaintiff "protested" the defendant's actions and in October, 1988, the plaintiff attempted to hold a first-step grievance meeting with the defendant in accordance with the agreement's grievance procedure provision (Article V). Defendant further admits that it refused to participate in any step of the grievance procedure.

The issues before me are: (1) whether there exists a valid, enforceable agreement to arbitrate; and (2) if so, whether the subject matter of the plaintiff's dispute with the defendant is covered by that agreement.

### II. *Legal Discussion and Conclusion.*

The threshold inquiry in resolving a motion to compel arbitration is whether there exists a valid, enforceable agreement to arbitrate. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Zdeb v. Shearson Lehman Bros.*, 674 F.Supp. 812, 813 (D.Colo.1987), *citing United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960). *See also AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986).

Within the context of a labor dispute, *AT & T Technologies, supra*, discussed the duty to arbitrate as follows:

"Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator...."

\* \* \* \* \* \*

"[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims...."

"[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the as-

serted dispute. Doubts should be resolved in favor of coverage." 106 S.Ct. 1418–1419.

As previously noted, I need only determine whether a valid, enforceable agreement to arbitrate exists between the parties and, if so, whether that arbitration clause is broad enough to cover the underlying dispute. Neither party disputes that the arbitration clause (Article V) is valid and enforceable.

Plaintiff argues that § 1 of the agreement's grievance procedure (Article V) is broad enough to require arbitration of its claim against the defendant. Section 1 provides in relevant part:

"The Guild shall designate a committee of its own choosing to take up with the Publisher or his authorized agent *any matters arising from the application of this Agreement....*" (emphasis added).

Defendant argues that the plaintiff's claim is not covered by the agreement to arbitrate because the Regional Director's decision excluding district managers from the bargaining unit also excluded them from the agreement itself. Therefore, the defendant contends, the parties had no contractual duty to arbitrate whether the plaintiff should be paid dues by the defendant for employees no longer in the bargaining unit.

Plaintiff disagrees, and contends that the effect of the Regional Director's decision on the agreement is a question for the arbitrator, not the court. Plaintiff primarily relies on *Concourse Village, Inc. v. Local 32E*, 822 F.2d 302 (2d Cir.1987) in support of its position.

In *Concourse Village*, the operator of a residential apartment complex commenced suit under the Act to stay arbitration sought by the union on behalf of its maintenance employees. The issue to be arbitrated concerned whether "superintendents" were covered by the parties' 1984–

1987 collective bargaining agreement after a NLRB unit clarification decision. The NLRB decision had excluded superintendents from the bargaining unit.[1]

The union claimed that since Concourse Village consented to coverage of the superintendents when the parties' agreement was negotiated, arbitration of the underlying dispute was not precluded by the NLRB decision. Concourse Village contended that the NLRB unit determination barred arbitration of the dispute because the unit determination ended recognition of the union as the superintendents' representative. The district court, concluding that arbitration was improper, granted summary judgment for the plaintiff. Defendant union appealed.

The Second Circuit, in reversing the lower court's decision, held that the parties' agreement provided for arbitration of disputes involving the scope of the agreement. The parties' underlying dispute regarding the "superintendents" fell within the scope of the agreement, even after the NLRB decision.

In its reasoning, the Second Circuit reiterated the court's limited role in deciding the question of arbitrability and the arbitrator's role in deciding the underlying dispute:

It is not the role of this court to determine the merits of the underlying dispute. *See AT & T Technologies*, 106 S.Ct. at 1419. Rather, we must decide only whether the arbitration clause contained in the valid 1984–87 collective bargaining agreement is broad enough to require the parties to submit the underlying dispute to arbitration....

\* \* \* \* \* \*

[T]he arbitrator shall determine the threshold issue, which we deem arbitrable, of whether the superintendents are included in the 1984–87 collective bargaining agreement, notwithstanding the

---

**1.** In *Concourse Village,* the Regional Director decided that the superintendents were not supervisors and, therefore, not excluded from the bargaining unit. The NLRB reversed the Regional Director's decision. Thus, the NLRB decision at issue in *Concourse Village* was a "final"

decision. In the instant case, the Regional Director has ruled, but the matter is on appeal to the NLRB. I do not find, however, that this procedural difference lessens the impact of *Concourse Village* as persuasive authority.

NLRB unit clarification. 822 F.2d at 305.

*Communication Workers of America v. US West Direct,* 847 F.2d 1475 (10th Cir. 1988) also illustrates the strong federal presumption of arbitrability of representational, as well as contractual, disputes. In *Communication Workers,* the Tenth Circuit affirmed the district court's holding requiring an employer to arbitrate a union grievance concerning the employer's alleged failure to recognize that certain employees were covered under the parties' collective bargaining agreement.

Defendant, in its reply and cross motion, attempts to distinguish *Concourse Village* from the present case. I am not persuaded, however, by the defendant's arguments.

All doubts surrounding this dispute must be resolved in favor of arbitration. Based on all the matters before me, I cannot say "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Technologies, supra,* 106 S.Ct. at 1419.

I thus conclude that Article V of the agreement is broad enough to require the parties to submit their underlying dispute to arbitration. It is the arbitrator's role to determine whether the agreement continued to cover the defendant's district managers after the Regional Director's decision was issued.

Under Rule 56(c), Fed.R.Civ.P., summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Rule 56(c) applies with equal force when the parties have filed cross motions for summary judgment.

"The mere fact that both parties argue simultaneously that there is no genuine issue of material fact does not establish that a trial is unnecessary and that the case should be disposed of by summary judgment. Each motion must be considered separately, and each party, as a movant for summary judgment, bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *City of Northglenn v. Chevron U.S.A., Inc.,* 634 F.Supp. 217 (D.Colo. 1986) (citations omitted).

Based on the undisputed facts, I conclude that the plaintiff is entitled to judgment as a matter of law. Plaintiff's motion for summary judgment is granted.

I do not conclude, however, that the defendant's arguments in the instant lawsuit were advanced in bad faith, vexatiously, wantonly or for oppressive reasons. Plaintiff's prayer for costs, expenses, and attorneys' fees as sanctions against the defendant is denied.

Defendant's cross motion for summary judgment is denied.

Accordingly, it is ORDERED that:

(1) Plaintiff's motion for summary judgment is granted;

(2) Plaintiff's prayer for costs and attorneys' fees as sanctions against the defendant is denied; and

(3) Defendant's cross motion for summary judgment is denied.

Each party shall bear his or its own costs.